JOANOS, Judge.
The Florida Parole and Probation Commission (Commission) appeals the trial court’s order granting the petition of Joseph Cunard for writ of mandamus [by which Cunard sought to compel the Commission to grant his parole pursuant to his original presumptive parole release date (PPRD) ]. The Commission has raised four points for our review. The Commission contends the trial court erred (1) in substituting its judgment for that of the Commission in a discretionary matter, (2) in finding that Cunard had been denied parole, (3) in ruling that it was not bound by the decisions of this court, and (4) in granting Cunard’s release on bond pending the outcome of this appeal. Since our decision as to point one is determinative, we find it unnecessary to discuss in detail the other allegations of error raised by the Commission. We reverse solely on point one.
In 1978, Cunard plead guilty to one count of second degree murder and one count of grand theft. On September 5, 1978, he *89 was adjudged guilty and sentenced to a life term on the murder count and to a five-year term on the grand theft count, the sentences to run concurrently. Cunard had no prior history of any criminal behavior.
The Psychological Screening Report prepared on September 21, 1978, contains the following statements:
Attitude was good at the time of the evaluation. No psychological disturbance was evident.
Cunard’s initial parole interview was conducted on July 19, 1979, after which his PPRD was determined to be September 16, 1986. On July 28, 1981, acting on recommendation of the hearing examiner’s panel, the Commission reduced Cunard’s PPRD by twenty-four months for a new PPRD of September 11, 1984. The basis for the reduction was Cunard’s exceptional adjustment to the institutional setting, clear record, and unusually good attitude. In 1982 and 1983 the classification specialist assigned to interview Cunard recommended a further mitigation of his PPRD. In each instance, the Commission refused any further mitigation, and reaffirmed the September 11, 1984, PPRD.
On November 9, 1983, the Commission filed a request with the Department of Corrections for preparation of a mental health status report (MHSR) on Cunard, with a focus on any potential he might have for violence or assaultive behavior, for criminal behavior, the release risk he might pose to society, his mental and emotional stability, and any treatment needs he might have. On March 27, 1984, the Commission again requested preparation of the MHSR. The MHSR which appears in this record is undated, but it appears to have been transmitted to the Commission with a memorandum dated August 6, 1984. In this report, the interviewing psychologist stated there are no recognized standards by either the American Psychiatric or Psychological Association which would provide for an effective prediction regarding a potential for future assaultive behavior. While recognizing that Cunard had earned a “model inmate” label and reflected no psychopathology, the interviewing psychologist expressed the opinion that his release risk to society was questionable.
On July 13, 1984, Cunard was interviewed for the purpose of establishing an effective parole release date (EPRD). The Commission determined that it would not establish an EPRD, giving as reasons for this action the information contained in the MHSR. The report of Commission action taken on the EPRD interview states:
Since your last interview of 5-17-84, the Commission has come into receipt of new information, specifically a. mental health status report, transmitted and received by the Commission on 8-17-84, prepared by Department of Corrections staff. Said report notes prognosis and acceptable resocialization as questionable based on lack of clinical observation, exploration and treatment. Also, given the same set of circumstances, there would be nothing to preclude inmate from committing this same crime again. It questions his ability to tolerate stress and, thus, his judgment may not be proper at times.
The Commission’s assessment is that your release risk to society is questionable and it appears that you are in need of further observation and treatment modality. The Commission’s assessment in your case requires the Commission to extend your assigned date to allow further observation and possible treatment. This action is consistent with the welfare of society, as well as for the welfare of the inmate, until such time as it may be demonstrated that you do not present a risk to society or yourself (emphasis added.)
On September 5, 1984, the Commission extended Cunard’s PPRD an additional sixty months, which resulted in a new PPRD of September 11, 1989.
On September 19, 1984, Cunard petitioned this court for a writ of mandamus to compel the Commission to honor the original PPRD. The case was transferred to circuit court, which court issued an order directing the Commission to show cause *90 why the petition for writ of mandamus should not be granted. In its response, the Commission took the position that the petition should be dismissed since the MHSR constituted new information which justified extension of the PPRD. On November 28, 1984, Cunard filed a reply to the Commission's response, alleging that contrary to the Commission’s assertion, the MHSR was a second report which is similar to the first, thus there was no “new” information which would justify the extension of the PPRD. On January 21, 1985, the circuit court judge granted the petition for writ of mandamus, and ordered the Commission to release Cunard. After the Commission filed its notice of appeal, this court relinquished jurisdiction for 15 days to enable the circuit court judge to reconsider the matter in light of the supreme court’s then newly released opinion in Florida Parole and Probation Commission v. Paige, 462 So.2d 817 (Fla.1985). After a study of the Paige opinion, the circuit court judge considered it inapplicable to the instant case and again granted the petition for writ of mandamus. On February 27, 1985, Cunard filed a motion for release pending appeal. The motion was granted, on the conditions that Cunard post bond in the amount of $500 and that he remain in the State of Florida during the pendency of the appeal.
The first question presented in this appeal is whether the trial court judge improperly substituted his judgment for that of the Commission in a matter reserved to Commission discretion and expertise. The adoption, in 1978, of the Objective Parole Guidelines Act[1] restricted the Commission’s former unbounded discretion in making parole decisions. Ch. 78-417, § 106, Laws of Fla.; Gobie v. Florida Parole and Probation Commission, 416 So.2d 838 (Fla. 1st DCA), review denied, 424 So.2d 762 (Fla. 1982). Although the Act has required the Commission to promulgate and utilize objective criteria in parole decision making, the Florida Supreme Court has reaffirmed that the Commission, pursuant to Section 947.18, Florida Statutes, “has the ultimate discretion in deciding whether to parole.” Florida Parole and Probation Commission v. Paige, 462 So.2d, at 819. Section 947.18 provides, in relevant part:
No person shall be placed on parole merely as a reward for good conduct or efficient performance of duties assigned in prison. No person shall be placed on parole until and unless the commission finds that there is reasonable probability that, if he is placed on parole, he will live and conduct himself as a respectable and law-abiding person and that his release will be compatible with his own welfare and the welfare of society.
The establishment of a PPRD is governed by the provisions of Section 947.172, Florida Statutes. Once this PPRD has been agreed upon, it becomes binding on the Commission and may be modified only for reasons of institutional conduct, acquisition of new information not available at the time of the initial interview, or for good cause in exceptional circumstances. §§ 947.16(4) and 947.173(3), Fla.Stat.; Florida Parole and Probation Commission v. Paige, supra; Jackson v. Florida Parole and Probation Commission, 424 So.2d 930 (Fla. 1st DCA), appeal after remand, 429 So.2d 1306 (Fla. 1st DCA 1983). Despite the binding nature of a PPRD, the conversion of that date into an effective parole release date (EPRD) is not automatic. Florida Parole and Probation Commission v. Paige, at 819; Kirsch v. Greadington, 425 So.2d 153 (Fla. 1st DCA 1983). First, an inmate receives a final interview and review to establish an EPRD, following which the Commission must determine whether to authorize the EPRD. § 947.-174(6), Fla.Stat. (1981) (now § 947.1745, *91 Fla.Stat. (1983)). If none of the factors which would support modification of the PPRD are present, i.e., new information, institutional conduct, or extraordinary circumstances, the Commission may still refuse parole if it finds the inmate does not meet the conditions provided in Section 947.18. See: Florida Parole and Probation Commission v. Paige, 462 So.2d, at 820.
In this case, the trial court recognized that the supreme court in Paige construed Section 947.18 as leaving the ultimate parole decision to the discretion of the Commission. The trial court viewed the Paige decision as inapplicable, however, because the Commission had expressly based its denial of parole in this instance on Section 947.16(4), in that the Commission considered that the MHSR contained “new information” which justified extension of Cunard’s PPRD. Since the information asserted to be new was merely a reiteration of information already considered by the commission, the trial court held the record did not contain sufficient information to justify an extension of Cunard’s PPRD.
We agree that the MHSR contains no “new information” justifying extension of Cunard’s PPRD an additional sixty months. As the trial court noted, this record is replete with evidence that Cunard has maintained an exemplary prison record and work release record. Further, the Commission formerly reduced Cunard’s initial PPRD from 1986 to 1984, and on two subsequent occasions Commission interviewers recommended additional reductions.
We disagree, however, that the Commission denied parole solely on the basis of Section 947.16(4). The report which documents Commission action on the EPRD interview does specify, as the trial court observed, that Commission refusal to authorize an EPRD was based on receipt of “new information” in the form of a mental health status report. Nevertheless, the second paragraph of the statement explaining Commission action reads:
The Commission’s assessment is that your release to society is questionable and it appears that you are in need of further observation and treatment modality. The Commission’s assessment in your case requires the Commission to extend your assigned date to allow further observation and possible treatment. This action is consistent with the welfare of society, as well as for the welfare of the inmate, until such time as it may be demonstrated that you do not present a risk to society or to yourself. (emphasis added).
We find that this language, which paraphrases the provisions of Section 947.18, is sufficient to invoke Commission discretion to deny parole. Therefore, we reverse the order of the trial court which directed the Commission to effect the immediate parole of Cunard. Furthermore, reversal in this case would be necessary, even in the absence of language which implicitly invokes the provisions of Section 947.18. Once the trial court determined the Commission had failed to comply with the statutory grounds for denial of authorization of an EPRD, the appropriate trial court action was remand to the Commission for proper performance of its ministerial duty. See: Moore v. Florida Parole and Probation Commission, 289 So.2d 719 (Fla.), cert. denied, 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974); Kirsch v. Greadington, 425 So.2d 153 (Fla. 1st DCA 1983).
We find, however, that the Commission acted outside the scope of the objective parole guidelines when it extended Cunard’s PPRD an additional sixty months. See: §§ 947.16(4) and 947.173(3), Fla.Stat. (1981); Jackson v. Florida Parole and Probation Commission, 424 So.2d 930 (Fla. 1st DCA 1983). In Jackson this court reversed a Commission extension of a PPRD, on the ground that the Commission’s assertions of “new information” were not supported by the record. Concluding that chapter 947 does hot contemplate a “modified date ... after the date established by the procedures of s. 947.-172,” the court found that Jackson’s initial “PPRD should remain his PPRD, even though he was not paroled on that date.” *92 § 947.173(3), Fla.Stat. (1981); Jackson v. Florida Parole and Probation Commission, at 931. See also: Florida Parole and Probation Commission v. Paige, 462 So.2d, at 820. Since it is clear that the “Commission cannot modify a PPRD on its assertion of ‘new information' where that information has already been considered and acted upon by the Commission in establishing the PPRD,” we vacate Cunard’s extended PPRD of September 11, 1984, with directions that the former PPRD of September 11, 1984, is to be reinstated. See: State ex rel Boyles v. Florida Parole and Probation Commission, 436 So.2d 207, 211 (Fla. 1st DCA 1983); Jackson v. Florida Parole and Probation Commission, 424 So.2d, at 931. Thus, although that date has been passed, it shall continue to be Cunard’s PPRD even though he has been refused parole. While this may appear to be awkward, it is the scheme that we believe the legislature to have adopted. We adopt the following language from Florida Parole and Probation Commission v. Paige, 462 So.2d, at 820, and apply it to the case at bar:
Consistent with the provisions precluding modification of [Cunard’s] presumptive parole release date because of the absence of new information or unfavorable institutional conduct, his presumptive date remains unchanged and he will be afforded biennial review to determine whether he can be found eligible for parole release. Fla.Admin.Code Rule 23-21.155.
The second point raised by the Commission, i.e., that the trial court erred in finding that Cunard had been denied parole, has been resolved by our decision on point one.
We find the Commission’s third assertion of error, i.e., that the trial court ruled it was not bound by decisions of this court, to be without merit. Finally, since we have determined that we must reverse the trial court’s order granting the petition for writ of mandamus, we find it unnecessary to address the propriety of an inmate’s release on bail pending the outcome of the State’s parole appeal.
Reversed and remanded for proceedings consistent with this opinion.
ERVIN and BARFIELD, JJ., concur.

. The Objective Parole Guidelines Act, effective June 27, 1978, is applicable to this case, since Cunard was convicted and sentenced on September 5, 1978, after the Act’s effective date. In addition, subsequent cases from this court have held that the statute does not contemplate that eligibility for parole is to be determined by the rules in effect at the time of commission of the crime. See: Britt v. Florida Probation and Parole Commission, 417 So.2d 1079 (Fla. 1st DCA 1982); Lopez v. Florida Parole and Probation Commission, 410 So.2d 1354 (Fla. 1st DCA), cert, denied, 459 U.S. 905, 103 S.Ct. 107, 74 L.Ed.2d 166 (1982).